IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



Victoria Rhodes,
Quinton Gardner,
Selina Riggs and
Donell Ellis

Plaintiffs

v.

No. 3:13cv JH cwr-LRA

Computer Sciences Corporation

Defendant

## Complaint

The plaintiffs file this suit for breach of contract against their former employer, Computer Sciences Corporation. Donell Ellis also sues for a wrongful termination under the Fair Labor Standards Act.

### *Parties*

1. The plaintiff Victoria Rhodes is a resident of Brandon, Rankin County, Mississippi.

2. The plaintiff Quinton Gardner resides at 109 Mockingbird Drive, Harleyville, South Carolina 29448.

3. The plaintiff Selina Riggs is a resident of Waycross, Georgia. She is currently employed overseas.

4. The plaintiff Donell Ellis resides at 20819 Dappled Ridgeway, Humble, Texas 77338.

**Jury Trial Requested**

5. The defendant is licensed to do business in Mississippi. Its principal place of business is in the state of Virginia.

### Jurisdiction

6. This court has jurisdiction pursuant to 28 USC §1331 and §1332.

### Venue

7. This court has venue over this matter pursuant to 28 USC § 1391(b).

### Facts

8. At various times between September 2010 and June 2011, CSC sent written offers of employment to the plaintiffs to work in Kuwait for $31.25 an hour or $31.49 per hour. The letter offers were addressed to the plaintiffs at their personal residences in Mississippi, Texas, and South Carolina.

9. The plaintiffs signed the written offers and returned them to CSC.

10. CSC then sent each plaintiff a "Foreign Travel" letter advising them that they could receive three types of additional pay called uplifts for: (1) a pay differential of up to 35% depending on the location, (2) a hardship allowance of up to 35% and (3) danger pay of up to 35%.

11. When the plaintiffs were assigned to work in Kuwait, they primarily worked at nearby Camp Arifjon. Some of the plaintiffs also worked in Iraq from time to time.

12. Some plaintiffs were temporarily assigned to work at Camp Virginia and/or Camp Beuhring in Kuwait. On those assignments, they worked up to fifteen (15) hours per day at the job site in addition to having commuting time of up to three (3) hours per day.

13. They were told to only record 12 hours per day on their electronic time sheet. When they reported the actual time of 15 hours, CSC's supervisors changed their time.

14. In addition to the hours worked on the jobsite, some of the plaintiffs were required to perform driving duties of up to 3 hours per day depending on the worksite in Kuwait.

15. From time to time, some of the plaintiffs were temporarily assigned to work in Iraq. On those assignments, they lived and worked at Camp Victory, Iraq.

16. The plaintiffs worked at the worksites a minimum of 12 hours a day for 7 days a week, a total of 84 hours per week. Based on 84 hours, CSC was contractually obligated to pay the plaintiffs wages of $2,625 per week based on their hourly rate. However, CSC breached the contract by paying only $1,298 per week.

17. Over time, some of the plaintiffs suspected discrepancies between their agreed contract rate and their actual pay.

18. Due to the multiple uplifts of unspecified percentages that varied with the country, the correct pay was a constant source of confusion to the plaintiffs.

19. Some of the plaintiffs made some inquiry about the discrepancies between their pay and their contract. They were rebuffed by CSC's management. Most of the plaintiffs did not press the issue further out of fear of losing their jobs.

20. The other plaintiffs knew that Donell Ellis was being persistent in his efforts to get the discrepancies resolved. They decided to let him take the lead in pressing the issue with CSC rather than risk being fired.

21. Mr. Ellis made repeated complaints to CSC management that he and other plaintiffs were not getting paid the agreed hourly rate of $31 an hour plus overtime. Mr. Ellis also complained to CSC management that (1) he was not getting paid for the time he drove others to the worksites and (2) he was not getting overtime payment for hours worked over 40 per week.

22. Donell Ellis believed in good faith that CSC was obligated to pay 1½ times his hourly rate for working more than 40 hours and to include his driving time in the calculation of hours worked.

23. Mr. Ellis' complaints were protected activity under 29 USC § 215 because he believed in good faith that CSC was violating the FLSA by failing to pay for all hours worked

24. CSC responded to Mr. Ellis' complaints by misrepresenting to him that all persons were paid on a salary and did not receive any extra pay for working over 40 hours a week.

25. Mr. Ellis knew that response was not true.

26. CSC knew that Donell Ellis was (1) complaining about the failure to pay overtime pay based on an hourly rate, (2) talking to wage hour attorneys in the U.S. about his pay issues, and (3) talking to his co-workers about a possible FLSA class action against CSC.

27. In retaliation for the above reasons, CSC terminated Donell Ellis as of 4/30/12.

28. Even after his termination, Donell Ellis persisted in his efforts to get what he believed to be the pay due him under the contract and under the FLSA.

29. He showed CSC management a copy of a paystub from a co-worker who was being paid the agreed hourly rate for all hours worked.

30. CSC was then faced with documentation that it had been less than truthful with Ellis. CSC then required the other plaintiffs and all other employees to sign new employment contracts on 5/25/12 that specified a flat salary for all hours worked.

31. Count I. Prior to 5/25/12, CSC breached its contractual obligation to pay the plaintiffs $31.25 for all hours worked.

32. Count II. CSC terminated Donell Ellis because he had complained about CSC's failure to (1) pay for all hours worked, (2) to pay overtime after 40 hours and (3) to pay for commuting time and driving time.

33. The defendant's breach of the contract to pay the agreed hourly rate for all hours worked was willful and wanton.

34. CSC's termination of Donell Ellis was a willful wanton violation of the Fair Labor Standards Act.

### Request for Relief

35. For the above reasons, the plaintiffs seek damages under Count I of damages based on the agreed hourly rate plus prejudgment interest, plus punitive damages of $1 million plus reasonable attorney's fees

36. Under Count II, the plaintiff Donell Ellis seeks back-pay since his termination, liquidated damages, prejudgment interest and legal fees as provided for by the Fair Labor Standards Act.

Dated: April 10 2013.

Respectfully submitted,

*Mike Farrell*

Mike Farrell
MSB No. 5147
Mike Farrell, PLLC
210 E. Capitol Street
Regions Plaza, Suite 2180
Jackson, MS 39201
T: 601-948-8030
F: 601-948-8032
mike@farrell-law.net