**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 14-2366**

———————————

GEORGE RISHELL, on his own behalf and on behalf of those
similarly situated,

                Plaintiff - Appellee,

       and

VICTORIA RHODES; QUINTON GARDNER; SELINA RIGGS; DONELL ELLIS;
KWAN JOHNSON,

                Plaintiffs,

       v.

COMPUTER SCIENCES CORPORATION, a Foreign Profit Corporation,

                Defendant - Appellant.

———————————

**No. 14-2376**

———————————

VICTORIA RHODES; QUINTON GARDNER; SELINA RIGGS; DONELL ELLIS;
KWAN JOHNSON,

                Plaintiffs - Appellees,

       v.

COMPUTER SCIENCES CORPORATION,

                Defendant - Appellant.

———————————

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:13-cv-00931-CMH-TCB; 1:14-cv-00213-CMH-TCB)

——————————

Argued:  January 27, 2016                    Decided:  May 2, 2016

——————————

Before DUNCAN and DIAZ, Circuit Judges, and Loretta C. BIGGS, United States District Judge for the Middle District of North Carolina, sitting by designation.

——————————

Affirmed by unpublished per curiam opinion.

——————————

**ARGUED:** Catherine Emily Stetson, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant.  Angeli Murthy, MORGAN & MORGAN, Plantation, Florida; Mike Farrell, MIKE FARRELL, PLLC, Jackson, Mississippi, for Appellees.  **ON BRIEF:** Thomas J. Woodford, Mobile, Alabama, Samuel Zurik, III, Robert P. Lombardi, THE KULLMAN FIRM, New Orleans, Louisiana, for Appellant.  Thomas Farrell Egge, Alexandria, Virginia, for Appellees Victoria Rhodes, Quinton Gardner, Selina Riggs, Donell Ellis and Kwan Johnson.

——————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This consolidated appeal arises from two independent actions, each involving a contract dispute between employer, Computer Science Corporation ("CSC"), and certain employees.  The employees of CSC brought suit, claiming that when working overseas, they were entitled to hourly wages for every hour worked, rather than the fixed salaries they were paid by CSC.  Both actions, which originated in different jurisdictions, were transferred to the U.S. District Court for the Eastern District of Virginia.  The district court granted summary judgment in favor of the employees in each case.  For the reasons that follow, we affirm.

I.

The employees involved in this appeal are George Rishell ("Rishell") in one action, and in the second action Victoria Rhodes, Quinton Gardner, Selina Riggs, Donell Ellis, and Kwan Johnson (collectively, "Rhodes Appellees").  At the time of hiring, each employee signed an Offer Letter and a Foreign Travel Letter provided by CSC.  Rishell's Offer Letter states, "[Y]our compensation will consist of an hourly rate of $32.93 ($68,500 annually), which will be paid biweekly."  J.A. 246.  The Offer Letter of each of the Rhodes Appellees contains an identical statement, but with a different hourly rate and no mention of an annual amount:  "[Y]our compensation will consist of an hourly

3

rate of $31.25, which will be paid biweekly."[1]  J.A. 844, 866, 878, 902, 916.  The Foreign Travel Letter details the compensation and benefits that each respective employee will receive while overseas.  The section of the letter outlining compensation discusses categories of pay to include base pay, pay differentials, hardship pay, and danger pay.  With respect to base pay, the letter states, "Your base weekly salary will not change as a result of this assignment."  J.A. 105, 848, 870, 882, 906, 920.

After joining CSC, Rishell and the Rhodes Appellees were each assigned to work overseas.  While overseas, they each regularly worked 84-hour weeks but received fixed pay for only 40 hours each week.  Claiming they were entitled to hourly wages for every hour worked under their respective Offer Letter and Foreign Travel Letter, Rishell and the Rhodes Appellees filed suit.  On cross-motions for summary judgment in each case, the district court concluded that the letters unambiguously provided for hourly wages, rather than fixed salaries, and granted summary judgment in favor of Rishell in his case and each of the Rhodes Appellees in their case.  This appeal followed.

---

[1] $31.25 was the hourly rate for Rhodes and Ellis.  Gardner and Riggs were offered $31.49, and Johnson was offered $32.69.

4

II.

We review a district court's award of summary judgment de novo, applying the same legal standards as the district court. Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 120 (4th Cir. 2015). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, the parties do not argue that material facts are in dispute. Rather, the issue here is a matter of contract interpretation; thus, it will be decided as a matter of law. See Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 290 (4th Cir. 2010). Because the parties filed cross-motions for summary judgment, "we consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Defenders of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014) (quoting Bacon v. City of Richmond, 475 F.3d 633, 638 (4th Cir. 2007)).

III.

A.

As an initial matter, we must consider what law governs the interpretation of the Offer Letter and Foreign Travel Letter signed by each employee. As to Rishell, who originally filed suit in federal court in Florida, the district court applied Florida's choice-of-law rules and determined that Florida law governs. CSC

5

does not dispute this determination on appeal.  As to the Rhodes Appellees, who originally filed suit in federal court in Mississippi, the district court applied Mississippi's choice-of-law rules and determined that Virginia law governs.  CSC challenges this determination, arguing that Kuwaiti law should govern instead because the employees were stationed in Kuwait for the majority of their time overseas.  We disagree.

In choice-of-law determinations, Mississippi relies on the "center of gravity" doctrine, which requires courts to consider (1) "the place of contracting;" (2) "the place of negotiation of the contract;" (3) "the place of performance;" (4) "the location of the subject matter of the contract;" and (5) "the domicile, residence, nationality, place of incorporation and place of business of the parties."  Zurich Am. Ins. Co. v. Goodwin, 920 So. 2d 427, 433, 435 (Miss. 2006) (quoting Restatement (Second) of Conflict of Laws § 188 (Am. Law Inst. 1971)).  Balancing these factors, we agree with the district court that as it relates to the Rhodes Appellees, Virginia is the center of gravity.  While Kuwait is the employees' place of performance and the location of the subject matter of the contracts, the remaining factors tip in favor of Virginia.  Virginia is where CSC's headquarters are located, where the employees mailed their signed contracts, where the decisions were made to hire the employees, and where CSC performed its obligations under the contracts.  Also, while none

of the employees are residents or domiciliaries of Virginia, neither party argues that they are residents or domiciliaries of Kuwait.  However, the employees all are residents and domiciliaries of the United States.  Ultimately, the center-of-gravity doctrine directs courts to apply "the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation."  Id. at 433 (quoting Mitchell v. Craft, 211 So. 2d 509, 514–15 (Miss. 1968)).  That place, as the district court determined, is Virginia.

We will therefore apply Florida law to Rishell's Offer Letter and Foreign Travel Letter and Virginia law to the Rhodes Appellees' Offer Letters and Foreign Travel Letters.

B.

We next address the central dispute of the parties:  whether each employee's Offer Letter and Foreign Travel Letter, construed as single contracts, provide for hourly wages or fixed salaries when an employee is overseas.[2]   Our primary objective in

---

[2] When two documents are executed by the same parties, at the same time, as part of the same transaction, as in this case, the documents are generally construed together as a single contract. See Wilson v. Terwillinger, 140 So. 3d 1122, 1124 (Fla. Dist. Ct. App. 2014); Parr v. Alderwoods Grp., Inc., 604 S.E.2d 431, 434–35 (Va. 2004) (stating that two such documents *must* receive the same construction).  The various provisions are then harmonized, giving

7

interpreting a contract is to determine and give effect to the parties' intent. Sanislo v. Give Kids the World, Inc., 157 So. 3d 256, 270 (Fla. 2015); Pocahontas Mining Ltd. Liab. Co. v. CNX Gas Co., 666 S.E.2d 527, 531 (Va. 2008). To determine the parties' intent, we begin with the language of the contract. See Hahamovitch v. Hahamovitch, 174 So. 3d 983, 986 (Fla. 2015); Pocahontas, 666 S.E.2d at 531. When the language of a contract is clear and unambiguous, we enforce the contract as it is written. Hahamovitch, 174 So. 3d at 986; TravCo Ins. Co. v. Ward, 736 S.E.2d 321, 325 (Va. 2012). A contract is ambiguous when it can reasonably be interpreted in more than one way. CitiMortgage, Inc. v. Turner, 172 So. 3d 502, 504 (Fla. Dist. Ct. App. 2015); Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, Inc., 756 S.E.2d 415, 418 (Va. 2014). "However, a contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." Robinson-Huntley, 756 S.E.2d at 418 (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 561 S.E.2d 663, 668 (Va. 2002)); accord Minassian v. Rachins, 152 So. 3d 719, 725 (Fla. Dist. Ct. App. 2014).

Here, the parties agree that the Offer Letter unambiguously provides for hourly wages; however, their dispute centers around

---

effect to each when reasonably possible. See City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000); Schuiling v. Harris, 747 S.E.2d 833, 836 (Va. 2013).

the meaning of "base weekly salary," as it appears in the Foreign Travel Letter provision discussing "base pay."  The provision states that an employee's "base weekly salary will not change as the result of [an overseas] assignment."  J.A. 105, 848, 870, 882, 906, 920.  Rishell and the Rhodes Appellees interpret "base weekly salary" simply as an hourly rate stated in weekly terms, with no effect on an employee's base pay.  They argue that under the terms of the Offer Letter and Foreign Travel Letter, employees working overseas are entitled to the same hourly wages they would receive while working in the United States.  CSC, on the other hand, argues that the Foreign Travel Letter controls the compensation terms of an employee's overseas assignment, and thus base weekly salary trumps hourly wages as required under the Offer Letter.  CSC thus interprets the Offer Letter and Foreign Travel Letter to provide for a fixed salary when an employee is overseas, paid without regard to whether the employee works under or over 40 hours per week.[3]

Having considered the plain meaning of the parties' contracts, we conclude that each employee's Offer Letter and

---

[3] CSC argues that the pay differential outlined in the Foreign Travel Letter is specifically intended to make up for an employee's hours over 40.  This intended purpose, however, appears nowhere in either letter.  Also of significance is the fact that whether an employee is entitled to the pay differential is not guaranteed. Rather, it is in the discretion of the employee's manager.

Foreign Travel Letter, read together, unambiguously provide for hourly wages for every hour worked, rather than fixed salaries, when the employee is working overseas.  Though the Foreign Travel Letter does not define the term "base weekly salary," the letter states unequivocally that when an employee is on an overseas assignment, his "base weekly salary will not change as a result of this assignment."   J.A. 105, 848, 870, 882, 906, 920.   This statement appears as a clarification of "base pay," and makes clear that the intent of the parties is that an employee working overseas would be entitled to the same base pay that an employee would receive when not working overseas.   Id.   Since the Foreign Travel Letter is otherwise silent on the meaning of "base weekly salary," we must look to the Offer Letter to determine the base pay an employee would receive when working in the United States.   The Offer Letter expresses an employee's base pay in terms of an "hourly rate."[4]   J.A. 246, 844, 866, 878, 902, 916.   The hourly rate therefore represents the base pay that "will not change" when an employee is overseas, regardless of whether it is stated in

---

[4] Rishell's Offer Letter includes both an hourly rate and an annual sum, which is his hourly rate multiplied by 40 hours per week and by 52 weeks per year.  However, nothing suggests that the annual sum takes precedence over the hourly rate or that Rishell's pay will be capped at the annual sum.  Rather, the annual sum appears in parentheses following the hourly rate, suggesting it is supplementary or illustrative information.  See Rawls v. Rideout, 328 S.E.2d 783, 786 (N.C. Ct. App. 1985).

hourly or weekly terms.  Merely invoking the term "salary" does not transform hourly pay into fixed pay, particularly when accompanied by a statement that an employee's base pay "will not change."

CSC's arguments to the contrary are not persuasive.  Neither letter provides that the Foreign Travel Letter supersedes the Offer Letter when an employee is overseas; nor does either letter specify that an employee's weekly pay is capped at 40 hours per week, regardless of the number of hours worked.[5]  To accept CSC's interpretation of the letters would be to rewrite their terms, which we cannot do.  See Corwin v. Cristal Mizner's Pres. Ltd. P'ship, 812 So. 2d 534, 536 (Fla. Dist. Ct. App. 2002) ("[I]t is axiomatic that the courts may not rewrite or add to the terms of a written agreement."); TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 557 S.E.2d 199, 200 (Va. 2002) ("Contracts are construed as written, without adding terms that were not included by the parties.").

---

[5] CSC also argues that employees received over $37 per hour while overseas, which includes discretionary uplifts such as pay differentials and hardship pay.  After-the-fact rationalizations, however, do not alter the meaning of the contract.  By capping base pay at 40 hours per week, when employees regularly worked 84-hour weeks, CSC effectively reduced employees' hourly wages from $31 or $32 to around $15.  Neither letter contains language demonstrating that this was the intent of the parties.  Nor do the letters place the employees on notice of this base pay reduction.

Construing the contracts as written, we hold that Rishell and the Rhodes Appellees are entitled to the same base pay overseas as they would have received if working in the United States—hourly wages for every hour worked.

IV.

For the reasons outlined, we affirm the district court's grant of summary judgment in favor of Rishell and each of the Rhodes Appellees, and we affirm its denial of CSC's motions for summary judgment.

<u>AFFIRMED</u>